Petitioner Prudencia Jimenez Galloso would like to reserve five minutes for rebuttal. The immigration judge found my client is justifiably afraid of her husband who will murder her because he views her as his property. Whether she will be given protection here turns upon one primary question. Whether the government of Mexico, a country that fails to prosecute more than 90% of gender-based murders is unable or unwilling to protect her. The agency below held that she could not satisfy this requirement because she could not show that Mexico will condone her murder or be completely helpless to prevent it, and because she did not seek state protection. The board claimed to ground its reasoning in this court's law. However, the agency erred in both respects. First, the condone complete helplessness standard is an improperly heightened one that is inconsistent with the statute in the majority and earliest of this court's cases. And second, any absolute rule requiring a refugee to unsuccessfully seek state protection cannot be squared with a refugee statute or binding Eighth Circuit law. So to the first point, the heightened standard is wrong for several reasons. And first, it conflicts with the statute in at least three different respects. The unable or unwilling language appears directly in the statute. It says a refugee should be unable or must be unable or unwilling to avail herself of state protection. The word avail implies available. And if a state is neither able nor willing to provide protection, then such protection is not available. Additionally, the unable or unwilling standard appears within the term persecution itself using the ordinary tools of statutory construction. And this is because before Congress selected the term refugee in the Refugee Act, it had a well-established, well-settled construction. And that construction was that the harm must be inflicted either by a government or a non-governmental actor that the government is unable or unwilling to control. This was recognized by the agency in Acosta in 1985, and it was also recognized by the Eighth Circuit in Miranda in 1998, as well, again, as in Guthungu and Quinteros and a number of other cases in this circuit. It's important to note that no pre-Refugee Act case uses the condone complete helplessness articulation. And then thirdly, it conflicts with the statute because the non-state actor requirement must be read consistently with the well-founded fear test, which is met if there's a one in ten probability or possibility of future harm. The Supreme Court made this clear in 1987. But the future... Let me ask you, if we were able to conclude that substantial evidence supported a finding that the Mexican government was not unable or unwilling to protect women in this situation, would we need to reach this heightened standard question? Well, Your Honor, I believe the agency here very clearly said that she had to meet the heightened standard. She had to show that her government either condoned her violence or was completely helpless to protect it. And so I think affirming the agency decision under principles of the Chinere Doctrine, for a reason that the agency didn't provide, wouldn't be appropriate. But I also think the evidence here compels the conclusion that the Mexican government is unable or unwilling to provide protection. As I've said, Mexico fails to prosecute nine out of ten femicides. Sixty percent of women in Mexico are victims of domestic violence by intimate partners. And the majority of those killed had previously sought help. This is at the record at page 159 at the appendix. The expert declaration submitted in this case found that the government of Mexico... Or sorry, abusers act with impunity and the government of Mexico is virtually complicit. And so the expert explicitly found that the government of Mexico was unable or unwilling to provide effective protection. And it's important to note that the State Department reports also support a finding that unable or unwilling was met. In the abysmally low prosecution rates that do occur, the State Department notes that sentences that are provided are lenient sentences. This is at the appendix at page 113. And so I think the record in this case compels the conclusion that the unable or unwilling standard was met in this case. What was the evidence about her efforts to contact the police? So Your Honor, the record here shows that she did not seek state protection. However, the record also shows that most victims of domestic violence in Mexico don't seek state protection because it's so recognized that the government officials' efforts to in providing that protection. Was there any evidence as to why she in particular did not in her community? Yeah, absolutely. So in her community, she had known of other individuals who had sought state protection and did not receive it. When she was in the United States and was a victim of domestic violence, the beatings worsened when she sought state protection. And in fact, the expert... That's state protection here, correct? That's correct. But it shows that her reason for not wanting to seek state protection is because she fears reprisals from her spouse and that that's another reason for why she didn't want to seek state protection. How can you look at something that happened afterwards and say it was a reason for something you did before? Well, Your Honor, it was the immigration judge in this case that said because she, quote, would not seek state protection, she cannot satisfy the non-state actor element. So it was the immigration judge that based this non-state actor decision on her essentially announcement that she would not seek state protection. It doesn't really matter. I was asking more of the factual question where you assert that she was... She complained in the United States and the beatings got worse and going, well, she was already here. So how could that possibly have motivated her decision making when she chose not to report the incidents in Mexico? It was in response to the question of the immigration judge as to why she would not seek state protection. And I think it's important to note on this question of not seeking state protection, any bright line rule that an applicant must seek state protection unsuccessfully is inconsistent with the statute. As I've already said, the statute provides that a refugee can be either unable or unwilling to avail herself of state protection. But if you don't have any effort on her part, for whatever reason, not to seek protection, does the case law allow you just to rely generally on a country conditions report? Seems like there might be something in between the general idea that there's a lot of problems in this country with women coming to law enforcement to seek protection from abuse and saying that no woman would be able to go there. And so I'm wondering if there needs to be something in between those two extremes. Well, Your Honor, I do think this court's case law very clearly supports the idea that a woman need not unsuccessfully seek state protection. In both the cases of Guthungu and Nguengwe, neither petitioner in those cases sought state protection. And that's significant to note because in Guthungu, it was the unable unwilling standard that was recited by the court. And in Nguengwe, it was the complete helplessness standard that was cited by the court. But in both of those cases, even though those petitioners had not sought state protection, the court, looking at the country conditions themselves, found that such reporting would be futile. It wouldn't be required. And that holding is consistent as well with the agency decision in matter of SA. But I think, again, turning to the facts of this case, the record here reflects that when women report domestic violence in Mexico, that this can heighten their risk of harm. In fact, the expert stated, and this is at the appendix at page 65, that one of the moments of greatest risk is when a woman seeks to leave or seeks state protection. So any requirement that a refugee put herself in harm's way to ask for a government to protect her when the record reflects that it would be futile to do so would be antithetical to the purpose of asylum law. To follow up on that, just to push you a little bit more, and I appreciate what you're saying, about the difficulty that many women have in seeking protection from this kind of domestic violence, but would accepting what you say mean that the only thing that a person in their situation would have to show is the country report, and it would automatically be the finding that the country was unable or unwilling to protect that person? Your Honor, I think it's going to depend on each case in terms of the facts and the record as a whole. But what other... You're saying that that's all we need is just an understanding of the country's law enforcement from the country conditions report. That's correct. If the country conditions reports reflect that if an applicant seeks state protection, that the government would be unable or unwilling to provide that protection, then she's satisfied the burden under the statute. And the case law, because the statute very clearly says a refugee can be unable or unwilling, there's no suggestion that a penalty should attach to that refugee simply because she's unwilling rather than unable to seek state protection. The bright line rule that the immigration judge applied in this case, as I said, is inconsistent with case law and the statute itself, and therefore is just the wrong rule to resolve a case like this. What about the evidence in the record that says, that recognizes that there's been a substantial problem in Mexico in the past, but in the recent past and in the present that the government of Mexico has made renewed efforts to provide greater protection to victims and to provide greater education and have established more formalized support for domestic violent shelters? There's like seven or eight places in the appendix where that's referenced. Does that matter to us? Your Honor, I'm glad you asked the question because you're right. The record does reflect that there are domestic violence laws that have been passed, that there's a gender alert system that's been issued, and that there are domestic violence shelters that have been created. But again, domestic violence laws do no good if the vast majority of them, more than 90 percent in terms of when an applicant is murdered, are unenforced. The gender alerts, and this is at the appendix of page 118, the record reflects that those alerts have made no noticeable difference. And in the handful of instances in which gender alerts were issued, it was only one or two times. Again, the reports found that they were ineffective. And then I would also point you to page 120 in the appendix. The domestic violence shelter, one domestic violence shelter was looked at in Mexico City and the report found, quote, none of the women obtained any proper protection. And so the fact that these minimal efforts on the part of the government are not providing protection shows that the unable and unwilling standard is not met. And it also reaffirms that the government is seeking to apply a complete helplessness standard here. If even ineffective efforts on the part of the government defeat a claim such as this, it shows that a heightened standard is being applied. On that question, you mentioned Chenery. But isn't it pretty clear here that the BIA affirmed the IJ's conclusion that the respondent did not establish the Mexican government was or would be unable or unwilling to control her alleged persecutors? Yes, but in that pretty clearly the standard you heard. Well, but in coming to that conclusion, both the immigration judge and the Board of Immigration Appeals define that standard to mean that she must show that the government condones her murder or is completely helpless to prevent it. And so, Your Honor, I see that my I'm into my rebuttal time. I'll reserve the remainder. I just have one last question. The Fifth Circuit in Gonzales versus Gonzales Villas versus Barr said that the terms are interchangeable. Why is that wrong? Well, I think Gonzales Villas is not instructive for a couple of reasons. Number one, its entire discussion of matter of AB is dicta because that case was denied on a pre AB nexus standard. And therefore, all of its discussion of AB really didn't have to be reached to resolve that case. But additionally, Gonzales Villas devoted all of one paragraph to the discussion of the non-state actor requirement, didn't address any of our arguments with respect to the standard being rooted in the statute and so forth. Thank you. Thank you. Morning, Mr. Pandia, good morning, please. The court, Brian Pandia, on behalf of the Department of Justice, Ms. Gallo says petition for review should be denied for two reasons. First, substantial evidence supports the immigration judge's determination that Ms. Gallo failed to show, failed to carry her burden that the Mexican government was unable or unwilling to protect her. The board properly affirmed after adopting the immigration judge's factual findings that Ms. Gallo was not entitled to withholding of removal. The evidence of the board considered included country reports that showed improving conditions in Mexico, but also facts specific to her particular circumstance. Those facts, which I think need to be considered in the totality, include that, as we talked about before, she never sought assistance from law enforcement. She has a brother who is a local police officer. And the fact that her estranged spouse lives almost five hours away from where she she will be returned to Mexico. Petitioner's case is a disagreement over the weight of the evidence, but that's not an appellate issue. These are factual findings by an immigration judge that were adopted and affirmed by the Board of Immigration Appeals that this court reviews under a substantial evidence standard. Second, the second issue of the immigration judge's determination that her asylum claim was untimely is not reviewable under Section 208A3 of the INA. This court has consistently held in numerous cases that the review bar extends to determinations of whether the asylum applicant demonstrated changed or extraordinary circumstances. I do have a question about that. The the BIA, it seemed the the IJ talked about extraordinary circumstances and the BIA talked about changed circumstances. And those are different standards. Those aren't those don't collapse into one. What do we make of that? Right. Well, I acknowledge I think there was some there was some some interchangeability in the language that was used. But ultimately, what the issue was, the determination that the that the IJ made that the IJ affirmed was that Ms. Gayosa PTSD was not a barrier, was not such a changed or extraordinary circumstance that precluded her from timely seeking bringing an asylum claim. And that's a quintessential, quintessential factual determination. The judge looked at the expert testimony that Ms. Gayosa proffered, considered her credibility, considered her ability to to seek to seek asylum. But my question is, I don't think extraordinary circumstances and change, change circumstances are the same, are interchangeable. I think they are different. Would you agree? I would not disagree with that. Yes, I would agree. And and I'm trying to I'm struggling with what to do with the with the fact that the BIA did not rely on extraordinary circumstances, relied on changed circumstances and whether that affects how we can consider this. Well, I don't think it does, because ultimately it's the same. The same set of facts would have been used to prove whether she suffered from changed or extraordinary circumstances was her her PTSD that she suffered. And the IJ found that she she she was not so disabled that she could not have filed an asylum application in a timely manner. She had sought other government benefits previously and concurrently with with with the asylum filing. So ultimately, it's it is a factual determination that she would not have met either standard under either either set of facts. And I think I mean, it's it's it's it's a factual termination that's not not reviewable by the by the coordinator to await a three. Let me turn to the question about the unable or unwilling to control standard and the complete helplessness language. I want to want to raise three points in that regard. First, the board's decision was based primarily on the Eighth Circuit's decision in Hernandez versus Holder, which adopts an unable or unwilling standard. Here's what the board said on page four of its decision. The respondent has not met her burden to prove that the government either condoned the behavior of her abusers or that the government was unable to prevent the abuse. The board then continues. We therefore affirm the immigration judge's conclusion that the respondent did not establish that the Mexican government was or would be unable or unwilling to control her alleged persecutors. So the case was decided under the standard for persecution that Ms. Gayosa says is the correct standard. Then second point, if we look at footnote four of the board's decision, the board rejected any suggestion that it viewed the complete helplessness standard or the formulation that was articulated in the matter of AB as being any different from the unable or unwilling to control standard. Do you think that the words condoning someone's actions or being completely helpless to sort of as a gut feeling that seems different than simply unable or unwilling? Well, I don't think it is. And here's why. I mean, what we're getting at here is whether whether a government has is unable or unwilling to control persecution of someone. It's a member of a protected social group or are they struggling to control private conduct? Right. Unable or unwilling. You're right. And they're unable or unwilling. And we I mean, I think we call these standards, but they're really different formulations of the same interpretation of the same statute. And I think the Fifth Circuit, the Fifth Circuit said eloquently in its recent Gonzalez-Veliz decision that the attorney general did not raise the standard for the government's unwillingness or inability to protect the complete the complete helplessness standard. And the Fifth Circuit said the inability or unwillingness standard is interchangeable with the complete helplessness standard because the reason for that, and I think it's true here and this court has has used the terms interchangeably in Menjivar and in Guillen-Hernandez, they're one in the same. They're different formulations. You could be unwilling or unable to help someone, but not condone the actions of a private actor? Well, I think that's a difficult question, but what we're I mean, what we're looking at here is this is I mean, this is partly why we're in a substantial evidence review standard. We're looking at the totality of what happened to the individual asylum claim. So we can't I mean, I think it's sometimes it's difficult to say that in one instance, unable or unwilling might apply based on the facts of a specific case. In another instance, complete helplessness might be the more natural formulation to describe what is what's happening in the record of the case. But what we're looking at here and I mean, this case, I think, is a good example of where when you look at the totality of the record, the immigration judge heard a ultimately concluded that based on the improving conditions in Mexico, but numerous facts specific to Ms. Gayosa that she that that the Mexican government was not unable or unwilling to control her persecution. So that that is why I think that that is why when you look at the totality of the evidence and whether we call it complete helplessness, whether we call it unable or unwilling, it's all they're different formulations, different articulations of the same concept. Let me also address the point that Ms. Gayosa raises about the about the failure to call the police and the immigration judge and the board did not make that a categorical bar to asylum. And that's not our case. We're not arguing that's a categorical bar to asylum, but that is or the withholding of removal. But failing to engage law enforcement, I think, was a major it makes it more difficult to sustain the burden of showing that local law enforcement is unable or unwilling to control the violence. It wasn't just because she failed to call law enforcement, but we don't know how the Mexican police would have reacted. We don't. We do know her brother's a police officer. We do know that Miss, what is the fact that her brother's a police officer? How is that relevant? He that that he's her brother, but he's a police officer. And the evidence is that law enforcement is not particularly interested in protecting women who are suffering from domestic abuse. And certainly that may be may be true in the general, in the abstract. But I have to think that, you know, that that that if if my sister was in harm, if I was a police officer, I would certainly be. But was there evidence of that? And that's admirable. But unfortunately, not everyone has a brother like that. Well, we do know her brother was has been a police officer for 16 years since since he left there. There's no there's no there's no it's her burden to show that that that there was and that the Mexican police would have been unable and unwilling to protect her. We do know her brother's a police officer in her hometown where she's going to be returned. We have to assume that as the immigration judge said that he assumed that based on the record, based on the testimony that he heard, based on the evidence that was before him, that that that that would have been one reason why she would have been protected or did not meet her burden of showing that the local government was unable or unwilling to protect her. But was there testimony about the brother? There was testimony that he's been a police officer for 16 years. There was no there was no testimony that he would not have that he would not have protected her. I mean, there was testimony that he's been that he's a law enforcement officer in Mexico. But again, that that is just one one piece of evidence that's that within the totality of the evidence that was that was before the immigration judge that he reviewed, made credibility determinations, weighed the evidence and found that the Mexican authority was that found that misguided had not shown that she was unable or unwilling to that the Mexican government is not unable or unwilling to protect her. I'm happy to go through happy to go through that evidence. But otherwise, the case should be affirmed because it is supported by substantial evidence. There was no bright line categorical determination that failing to call the evidence. There's no differences in the standards and the claim is time barred. So I'm happy to answer any further questions. Otherwise, I will will yield my time. Hearing none, thank you. Allison, rebuttal. So the first point I'd like to make is, is that I do think the immigration judge absolutely applied a categorical rule. I'm reading directly from the decision because she says she will not call the police. The court finds she cannot show the government of Mexico would be unable or unwilling to control the private actor. She fears there was a bright line rule because she didn't call the police. He said that disqualified her. The other point about the record, she did testify very clearly that her brother was corrupt. He accepted bribes and she did not believe that he could protect her or would protect her. And the immigration judge found that her testimony was credible in this sense. And I'd also like to go back to an additional point just about the divergence of these two standards. Judge Kelly, we absolutely believe that the plain and ordinary meaning of those terms are divergent and that it is going to be much more difficult to show that a government is completely helpless in providing protection than a simple inability to protect. And we think that the fact that the decision came out the way it did shows that this was a complete helplessness case. Complete helplessness was applied here. And I think, Your Honor, I want to make one last point because the case law does diverge on this. There are very two clear lines of cases in the Eighth Circuit on this point. The minority view is the complete helplessness view. An amicus brief that was filed in this case signed by more than 100 legal scholars agrees that there is an unrecognized, unresolved tension in this court's case law. And we would respectfully request that this court apply the decision in U.S. vs. Matter, the en banc decision that says that earlier in time should prevail and that the unable and willing standard is the only correct standard. So we would just respectfully request that the court find for petitioner by holding that the correct standard is the unable and willing one, that a heightened standard was and that the court would correct the other errors we brought up in briefing, including with respect to the one year filing deadline. Very well, counsel, thank you for your appearance and arguments today. The case is submitted and will be decided in due course.